## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:23-CR-3057 |
| vs. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ROBERT VINCENT HARRIS, | |
| Defendant. | |

This matter, having been tried without a jury, is before the Court for findings of fact pursuant to Fed. R. Crim. P. 23(c). *See United States v. B.A.D.*, 647 F.3d 772, 776 (8th Cir. 2011). The parties have agreed to waive a jury trial, and the Court accepts that waiver, finding that the defendant's express waiver was knowing and intelligent. *See* Rule 23(a); *United States v. Mahler*, 141 F.3d 811, 814 (8th Cir. 1998); *United States v. Stalder*, 696 F.2d 59, 62 (8th Cir. 1982). The case has been presented on a largely uncontested record, *see* filing 65, and the parties have submitted the case after a hearing in open court and closing arguments presented by written briefs, *see* filing 67; filing 69; filing 71.

The defendant, Robert Harris, is charged by indictment with two counts of violating 21 U.S.C. § 841: (I) distribution of fentanyl resulting in serious bodily injury; and (II) possession of fentanyl, methamphetamine, cocaine, and heroin with intent to deliver. Filing 1. The events leading to those charges are largely undisputed, and the Court finds them to have been proven beyond a reasonable doubt, particularly relying on the statements of Harris (exh. 1 & 16D), and the alleged victim of Count I, Ariel. (exh. 2 & 16C).

FINDINGS OF FACT

On February 14, 2023, Harris was looking to buy heroin, but his usual source didn't have any. Instead, he got "10 blues" from his source, which looked like 30mg Oxycodone but he was certain were actually fentanyl.[1] He crushed them into powder to cut and snort throughout the day. At some point, he went to hang out at a friend's apartment. All of this happened in Lincoln, Nebraska.

Ariel L. (Ariel) was at the same gathering with several other people, and was dispatched to a convenience store at 17th and L Streets to buy alcohol. Harris went with her. He had offered Ariel heroin about a week earlier, and she asked if the offer still stood. He said it did, and suggested they stop by his apartment on the way to the convenience store. At his apartment, Harris produced a small mirror, which held powder and a short straw. He cut a line of the powder and snorted about two-thirds of the line himself. He gave Ariel the straw and she used it to snort the remainder.

They continued to the convenience store and Ariel bought alcohol while Harris waited outside. As they were walking away Ariel began feeling the drug's effect, and she fell down. She may have gotten up and fallen again, but after that doesn't remember anything until waking up in an ambulance.

Harris said that when Ariel passed out, he saw what he thought was Narcan in her purse, so he grabbed it. The clerk at the convenience store said that a man—indisputably Harris—came into the store with a "white T shaped object," which would describe Narcan nasal spray. He was, according to the clerk, fumbling with the object and may have been trying to fix it. He left the

---

[1] Counterfeit oxycodone made from fentanyl is not uncommon. *E.g. United States v. White, No. 0:22-CR-207, 2023 WL 5753678, at *16 (D. Minn. June 5, 2023).*

store but came back a short time later, and when the clerk offered to call 911 Harris told him he should.

Ariel came to in an ambulance, where the paramedic told her that she had been given Narcan and that they were giving her more. She was in the hospital for some time. The emergency room doctor who treated her, and an independent expert, each opined that Ariel suffered a fentanyl overdose, and a urine sample indicated the presence of a few drugs, including fentanyl.

When he returned home, Harris used the rest of the fentanyl. The next day he messaged another woman, Lorinda J. (Lorinda), about what happened the day before. Lorinda asked Harris if he could get more of the drugs and he said he could, but didn't have money. She wired him some money and said she would give him "a couple points," presumably for setting up the purchase. She indicated she would come to his apartment and pick the drugs up a little after noon. A couple of hours later, he messaged her again and asked, "how is that."

That evening, police executed a no-knock warrant at Harris' residence. A small amount of heroin was found on a small mirror in a dresser drawer, along with two short straws containing residue. Harris admitted acquiring that heroin earlier that day. One of the straws tested positive for fentanyl; the other tested positive for fentanyl, methamphetamine, cocaine, and heroin.

## CONCLUSIONS OF LAW

As will be explained below, the Court finds those facts prove the elements of each offense beyond a reasonable doubt, and will adjudge Harris guilty on both counts of the indictment.

### (I) Distribution of Fentanyl Resulting in Serious Bodily Injury

To sustain a conviction under 21 U.S.C. § 841(a)(1) with a serious bodily injury enhancement under § 841(b)(1)(C), the government must prove beyond

a reasonable doubt that (1) the defendant knowingly sold or otherwise transferred a controlled substance and (2) serious bodily injury resulted from use of that controlled substance. *See United States v. Cooper*, 990 F.3d 576, 581-82 (8th Cir. 2021); *see also United States v. Blair*, 93 F.4th 1080, 1085 (8th Cir. 2024). The defendant doesn't need to know the exact nature of the substance, only that it was a controlled substance of some kind. *Cooper*, 990 F.3d at 582.

### 1. DISTRIBUTION

The government proved beyond a reasonable doubt that Harris distributed a controlled substance. Specifically, Ariel said that she asked Harris if he could get heroin from him, and he said yes. At his apartment, he cut a line of powder on a mirror, gave Ariel a straw, and allowed her to consume some of it. She took possession of the drugs by ingesting them. And Harris admitted those events to law enforcement.

That's enough to show distribution. In *United States v. Frommelt*, 971 F.3d 823 (8th Cir. 2020), the defendant argued on similar facts that the evidence of distribution of methamphetamine was insufficient because of testimony that the drugs were simply out on a table when his guests arrived at his house. But the Eighth Circuit pointed to one of the guest's testimony that the defendant "left her a line of methamphetamine when she was staying the night in her bedroom." And even without that, because it was the defendant's house, it was reasonable to infer that drugs left out on a table in that house were left there by the defendant—again, supporting a finding of distribution.

The same is true here. Harris provided drugs for Ariel to use. Whether or not he handed the drugs directly to her—as opposed to leaving them on the

mirror for her to use—doesn't change that. It was his home, they were his drugs, and he provided them for her use.

Similarly, in *United States v. Parker*, 993 F.3d 595 (8th Cir. 2021), the defendant argued that the evidence was insufficient to show distribution because, he said, his girlfriend took the drugs on her own. But the Eighth Circuit rejected that argument, based on the defendant's testimony that he possessed the drugs first and she didn't steal them—instead, she took them from him and he didn't stop her. The Court of Appeals found sufficient evidence that the defendant had distributed heroin to his girlfriend because "[the defendant] knew the substance was heroin, brought it to the. . . apartment, discussed it with [his girlfriend], told his parole officer that he gave it to [her], and ultimately snorted it alongside [her]."

The Court does not find—particularly in light of *Frommelt*—that any admission that the defendant "gave" a pill to his girlfriend is essential to *Parker*'s holding. Rather, both cases take the common-sense view that hand-to-hand contact is not the only way to distribute drugs, and that in social settings a defendant may distribute drugs in his possession by knowingly permitting another person to take and use them.

Harris' argument to the contrary is factually off base. His argument, in a nutshell, is that when one drug user has drugs for personal use, and shares them with another drug user, that's not distribution. As support, he turns—as many defendants have—to the Second Circuit's decision in *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), in which the court held that a drug isn't distributed between users when it was jointly acquired and held by them for their own use. Filing 69 at 3.

But Harris—as many defendants have—misapplies *Swiderski* here. That case merely held that *joint* acquisition and possession by two closely

related persons is not enough to support an inference of intent to distribute. Outside the context of drugs that were *jointly* acquired and possessed, the law is quite clear, in the Eighth Circuit, in the Second Circuit, and in many other courts: Sharing drugs with another is "distribution" under § 841(a)(1). *See United States v. Ragland*, 555 F.3d 706 (8th Cir. 2009); *United States v. Ironi*, 525 F.3d 683 (8th Cir. 2008); *United States v. Hester*, 140 F.3d 753 (8th Cir. 1998); *United States v. Fregoso*, 60 F.3d 1314 (8th Cir. 1995).

The Second Circuit explained its own law best in *United States v. Wallace*, 532 F.3d 126 (2d Cir. 2008):

> The rule announced in *Swiderski* is expressly limited "to the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use. We advised that the rule would not apply where the evidence showed that the defendant handed over a small amount of marijuana for smoking purposes to another individual without proof that the other individual had jointly and simultaneously acquired possession of the drug at the outset. Rather, since sole possession in such a case would rest with the defendant, his transfer of the drug to a third person, friend or not, would violate the prohibition on drug distribution.

*Id.* at 130-31 (citations and quotations omitted).

That's why the Second Circuit and other courts have repeatedly rejected invitations to extend *Swiderski* to circumstances in which the defendant individually possessed drugs and then shared them with someone else. *See, e.g.*, *United States v. Bobadilla-Pagán*, 747 F.3d 26 (1st Cir. 2014); *United States v. Wright*, 593 F.2d 105 (9th Cir. 1979); *United States v. Washington*, 41

F.3d 917 (4th Cir. 1994). Instead, the consensus rule is that when a defendant provides others with drugs for personal use, even in a social setting, it's evidence of distribution. *See, e.g.*, *Bobadilla-Pagán*, 747 F.3d at 34 (defendant admitted to distribution when he said he sometimes shared marijuana with friends); *United States v. Boidi*, 568 F.3d 24 (1st Cir. 2009) (sharing with a girlfriend is as much distribution as selling on a street corner); *Wallace*, 532 F.3d at 130 (defendant's testimony that he purchased drugs for personal use but also shared them with friends—*i.e.* "if a lady friend come by we use it together"—was direct evidence of distribution); *United States v. Travis*, 201 F.3d 442 (6th Cir. 1999) (intent to share marijuana with friends is intent to distribute); *Fregoso*, 60 F.3d at 1325 (defendant distributed cocaine when he freely gave it to associates on numerous occasions); *Washington*, 41 F.3d at 920 (defendant distributed when he and his friends pooled their money to buy cocaine but defendant purchased it alone); *United States v. Ramirez*, 608 F.2d 1261 (9th Cir. 1979) (sharing cocaine with friends on vacation is distribution for purposes of § 841(a)(1)); *Wright*, 593 F.2d at 108 (defendant distributed drugs to woman who gave him $20 to buy heroin they would use together).

Here, Harris had sole possession of drugs, and shared with Ariel in a social setting. *Swiderski* is distinguishable, and the Court is not persuaded by the defendant's argument.

The defendant also points to the Third Circuit case of *United States v. Semler*, 858 F. App'x 533 (3d Cir. 2021), filing 69 at 3, in which the Third Circuit agreed with *Swiderski* that when there has been a joint acquisition or purchase of a controlled substance by a group of users to share among themselves, there is no "transfer" between the members of the group. But that case is distinguishable for the same reason *Swiderski* itself is. In *Semler*, the defendant and alleged distributee "planned *together* to purchase drugs;

traveled *together* to buy the drugs; and shared the drugs *together* for their own personal use." *Id*. at 540-41.

That, the Third Circuit said, was enough to at least warrant an instruction on joint possession and simultaneous acquisition. But, it's important to note the Third Circuit held that a properly instructed jury could still find distribution on those facts. *Id*. at 541. It's even more important to note that factually, *Semler* isn't applicable here—because again, there's *no* evidence here of joint acquisition or even possession. As the *Semler* court itself explained,

> we do not conclude that instances of "social sharing" can never constitute a distribution under § 841(a)(1). Certainly, there may be situations where a transfer of possession has occurred between users in a social setting. Consider a situation in which one user goes alone to purchase a quantity of a controlled substance for himself, then transfers some or all of that substance to another user in a social setting for that person to use alone or share with others. Such a situation is more likely to constitute a distribution than the one presented here, where individuals purchase drugs together to share only among themselves.

*Id*. at 539. The *Semler* court's holding was expressly limited to whether "physical divvying up of a small quantity of *jointly purchased and shared drugs* must constitute a distribution." *Id*. (emphasis supplied). And that holding has no bearing on the present case.

Harris also asserts that the government's theory of this case "would affirm a conviction under § 841(a) as applied to college roommates sharing a 'joint' by passing it back and forth while the other inhaled. That simply cannot

be the law, and no case law supports that proposition." Filing 69 at 2. But it turns out there's a good reason for that—the statute specifically addresses that situation, and treats it differently: "Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in [21 U.S.C. § 844] and [18 U.S.C. § 3607]." § 841(b)(4). In other words, sharing a joint is treated as simple possession. *See id.* (citing § 844). That statutory difference readily explains any lack of caselaw.

But the statutory language is also revealing: A person who violates § 841(a) "by *distributing* a small amount of marijuana for no remuneration" is treated as having committed the offense of simple possession. § 841(b)(4) (emphasis supplied). The statute clearly contemplates that passing a joint *is* "distributing" a controlled substance, which is why Congress created an exception for small amounts of marijuana. *See id.* But in this case, unfortunately for everyone involved, the defendant didn't share marijuana. So, he falls within the general ambit of the statute, not the exception.

## 2. KNOWLEDGE AND INTENT

The evidence also proved beyond a reasonable doubt that Harris acted knowingly. Ariel said that, about a week before her overdose, Harris offered her heroin. On the night of the overdose, she specifically asked for heroin, and he said he had some. He clearly knew he was offering a controlled substance. He admitted that he had crushed fentanyl pills into powder to use it. And the evidence shows that he provided the powder to Ariel intentionally, most pertinently by handing her the straw she would need to use it.

### 3. SERIOUS BODILY INJURY

Finally, the evidence is sufficient to prove beyond a reasonable doubt that Ariel suffered serious bodily injury. "[S]erious bodily injury" is "bodily injury" involving "a substantial risk of death"; "protracted and obvious disfigurement"; or "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 21 U.S.C. § 802(25)(A)-(C). The drug must be either the "but-for" cause or an "independently sufficient" cause of the injury. *United States v. Cathey*, 997 F.3d 827, 832 (8th Cir. 2021). The evidence is sufficient to show a "substantial risk of death" where the victim survived an overdose from the use of a controlled substance. *Cooper*, 990 F.3d at 582.

Here, the medical evidence establishes beyond a reasonable doubt that Ariel suffered an overdose involving an opiate and faced a substantial risk of death. And the evidence shows that Ariel obtained suspected fentanyl from Harris, consumed it, and became unresponsive shortly thereafter. Narcan, administered to Ariel, only reverses the effect of opiates, which is strong evidence of an opiate overdose. *See United States v. Cathey*, 997 F.3d 827, 833 (8th Cir. 2021).

In sum, the Court finds the expert testimony regarding Ariel's overdose persuasive, and that it proves beyond a reasonable doubt that Ariel's use of Harris' drugs caused serious bodily injury.

### (II) Possession of a Controlled Substance with Intent to Deliver

To convict a defendant of possession with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt that the defendant both knowingly possessed and intended to distribute the drugs. *United States v. Brown*, 88 F.4th 750, 761 (8th Cir. 2023).

This count is, the Court understands from the government's brief, based on the residue of drugs found in Harris' apartment after Ariel's overdose. Filing

- 10 -

59 at 9. Which makes sense, because Harris can't be convicted of violating
§ 841(a)(1) twice for briefly possessing and then distributing the same drugs.
*See* United States v. Mendoza, 902 F.2d 693 (8th Cir. 1990). So this charge must
be proved by his possession of drugs he did *not* provide to Ariel.

The evidence is obviously sufficient to prove, beyond any reasonable
doubt, that Harris possessed the drugs found in his apartment. The evidence
is also sufficient to prove beyond a reasonable doubt that he intended to—and
indeed, probably did—distribute the larger portion of the same drugs to
Lorinda. He admitted acquiring the drugs earlier that day, and the messages
found on his phone—supported particularly by the Cash App transfer—set
forth the transaction step-by-step. Harris might not have been a regular drug
dealer, but in this case he agreed to act as the middleman in a drug transaction,
which means he possessed drugs intending to distribute them.

Harris argues that the evidence is insufficient because there's only
circumstantial evidence that the transaction *planned* in the messages actually
panned out:

> Rather than purchase drugs for [Lorinda] perhaps Harris was only
> able to obtain from his source, enough for his personal use. Maybe
> he did get enough to deliver some to [Lorinda] The problem is,
> there is no evidence to support that conclusion. It is pure
> speculation. We might be able to connect the dots if we heard from
> [Lorinda] about what if anything actually happened. But on this
> record, there is simply no proof that Harris obtained any heroin on
> February 15, 2023, with the intent to deliver it to [Lorinda].

Filing 69 at 5. But the Court is unpersuaded. The messages found on Harris'
phone indicate that he was on his way to pick up the cash he was sent and the

- 11 -

drugs. The Court finds it unlikely that the deal would fall apart at that point. And Harris' argument doesn't explain a small but important piece of evidence: Harris' message a couple of hours after the planned delivery, "So how is that[?]" In the context of their conversation, the obvious interpretation of that question is that Harris was asking Lorinda what she thought of the drug—which obviously suggests delivery.

While the Court respects Harris' attempt to create reasonable doubt, the Court has none, and will adjudge the defendant guilty on both counts.

IT IS ORDERED:

1.    The defendant is found guilty beyond a reasonable doubt on Count I and Count II.

2.    The defendant's Rule 29 motion is denied.

3.    This case shall proceed to sentencing.

Dated this 12th day of August, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge